IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF MISSISSIPPI
NORTHERN (JACKSON) DIVISION

| | |
|---|---|
| MESA UNDERWRITERS SPECIALTY<br>INSURANCE COMPANY f/k/a<br>MONTPELIER U.S. INSURANCE COMPANY | PLAINTIFF |
| vs. | Civil Action No. 3:13cv29-CWR-FKB |
| LJA COMMERICIAL SOLUTIONS, LLC;<br>RENT CITY, INC.; and INDIVIDUALS<br>And XYZ ENTITIES | DEFENDANTS |
| and | |
| LJA COMMERICIAL SOLUTIONS, LLC | COUNTER-PLAINTIFF |
| vs. | |
| MESA UNDERWRITERS SPECIALTY<br>INSURANCE COMPANY f/k/a<br>MONTPELIER U.S. INSURANCE COMPANY | COUNTER-DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff/Counter-Defendant Mesa Underwriters Specialty Insurance Company's ("MUSIC") motions for summary judgment [*See* Docket Nos. 65, 100, 103]. These motions have been fully briefed by the parties, and the Court, having considered the parties' submissions, finds and concludes as follows.

*BACKGROUND*

In May 2012, Defendant Rent City, Inc. ("Rent City") contracted LJA Commercial Solutions d/b/a No Drip Roofing Company ("LJA") to remove its existing roofing system, re-deck its building facility and install a new roof.[1] MUSIC's Memo in Supp. of Mot. Summ. Judg.,

---

[1] Unbeknownst to Rent City, LJA's owner, Cliff Smith, subcontracted the actual roofing work to Tony Scroggs and a group of workers. Docket No. 97, Smith Dep., at 18. Rent City sent a Demand Letter to Scroggs in April 2014, but has not been given a response. *See* Docket No. 114 at 5, n.6, Rent City and Pauline Holocombe's Responses in Opposition to MUSIC's Motions for Summary Judgment and LJA's Reponses thereto.

1

Docket No. 67 at 2. On June 15, 2012, a thunderstorm barreled in while LJA was working on the roof. The thunderstorm lasted for a period of 45 minutes to one hour. At the time that the storm commenced, LJA had already removed all of the old roof from Rent City's building and a portion of the building was left uncovered. Docket No. 97, Smith Dep., at 30. LJA did not equip itself with tarping or any protective roofing material to cover the interior of the building from the pouring rain;[2] thus, the interior of Rent City's facility, including the merchandise, equipment and other fixtures contained therein, was exposed to rain shower and sustained significant damage as a result.[3]

LJA had commercial general liability (CGL) coverage under a policy issued by MUSIC. On January 10, 2013, in anticipation of litigation between Rent City and LJA, MUSIC sent a reservation of rights letter informing LJA that it would not defend or indemnify LJA if an investigation revealed that the water damage to Rent City's facility was not within its coverage. *See* Docket No. 100, at Exhibit A. That same day, MUSIC filed the present declaratory action in this Court, seeking a declaratory judgment that there is no coverage under its policy for the subject incident, and that MUSIC therefore has no duty to defend or indemnify LJA. Docket No. 1, MUSIC's Compl. at 15. MUSIC also named Rent City as a Defendant in this action.

Thereafter, on July 11, 2013, LJA filed its counterclaim against MUSIC, alleging claims for breach of contract, breach of duty of fair dealing and good faith (e.g., bad faith), negligence and gross negligence, misrepresentation and fraud, failure to reasonably investigate, waiver and estoppel, statutory violations, fraudulent concealment, damages, including punitive damages and

---

[2] At the start of the thunderstorm, Cliff Smith left Rent City's premises and hurried to LJA's warehouse to obtain tarping. However, it was nearly 45 minutes later when Smith returned to Rent City's building. By that time, the interior of Rent City's building received unabated rainstorm. *See* Docket No. 67, at 2.

[3] LJA eventually installed a new roofing system for Rent City's facility. Docket No. 99 at 2. There is some dispute about how long the interior of the building was exposed to rain shower.

its own claim for declaratory relief. *See* Docket No. 29. Rent City and Pauline Holcombe also filed counterclaims against MUSIC. Docket No. 12. In the counterclaim, among many other things, they alleged that "none of the circumstances triggering the exclusion for 'Roofing Operations (Open Roof)' in the MUSIC policy exists under these facts or were the proximate or efficient causes or contributory causes of Rent City's damages and losses." *Id*. at 12. Rent City also filed a cross-claim against LJA alleging damages to the building, loss business, and business interruption as a result of the incident. *Id.* at 9-14, 16. In the cross-claim, Holcombe alledged she incurred personal injuries resulting in some medical care charges and loss of wages. *Id.*

MUSIC subsequently filed a motion to partially dismiss LJA's counterclaims, as well as three motions for summary judgment denying any liability as to LJA's counterclaims or any duty to defend LJA for claims brought by Rent City and one of its owners, Pauline Holcombe.[4]

## *ANALYSIS*

### I.     Legal Standard

Motions for summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted).

The ultimate responsibility to assess the probative value of the evidence lies with a jury,

---

[4] There are several other moving parts in this case. For example, MUSIC has also filed a Motion to Strike [33] LJA's counterclaim [29]; Rent City has filed counterclaims against MUSIC and added Pauline Holcombe as a third-party plaintiff in bringing cross-claims against LJA and Zurich American Insurance Company (as third-party defendant); and LJA filed a Motion for Summary Judgment against Rent City and Pauline Holcombe [96].

and therefore, a court must not weigh evidence. *Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In order to avoid such a determination, a court views submitted evidence in the light most favorable to the party opposing summary judgment. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). But, "[t]he interpretation of an insurance policy language is a question of law." *Lewis v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss. 1998) (quotation marks and citation omitted). Where the relevant facts are not in dispute and the critical questions turn purely on legal rights and relationships, summary judgment is appropriately considered. *Canal Ins. Co. v. Owens*, No. 4:10-CV-009, 2011 WL 4833045, at *2 (S.D. Miss. Oct. 12, 2011).

The Court must follow state law for rules governing contract interpretations. *F.D.I.C. v. Firemen's Ins. Co. of Newark, NJ*, 109 F.3d 1084, 1087 (5th Cir. 1997). Under Mississippi law, an insurance policy is a contract that must be interpreted according to its terms. *Foreman v. Continental Casualty Co.*, 770 F.2d 487, 489 (5th Cir.1985). "The construction of an insurance contract is limited to an examination of the 'written terms' of the policy itself." *Nationwide Mut. Ins. Co. v. Yelverton*, 417 F. Supp. 2d 817, 820 (S.D. Miss. 2006) (citing *Employers Mut. Casualty Co. v. Nosser*, 250 Miss. 542, 553 (1964)). "The policy either affords coverage or not, based upon application of the policy language to the facts presented." *Architex Ass'n v. Scottsdale Ins. Co.*, 27 So.3d 1148, 1156 (Miss. 2010).

"The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole." *Id*. (citing *Cherry v. Anthony, Gibbs, Sage*, 501 So.2d 416, 419 (Miss. 1987)). "If an insurance contract is clear and unambiguous, the language therein must be given its plain meaning." *Id*. (citing *Gulf Nat'l Bank v. United States Fire Ins. Co.*, 713

F.2d 1106, 1109 (5th Cir. 1983)). *See also Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So.3d 1270, 1281 (Miss. 2009) ("where the words of an insurance policy are plain and unambiguous the court will afford them their plain, ordinary meaning and will apply them as written.") (quotation marks and citation omitted). If ambiguities exist in the insurance contract, "then the intention of the parties to the insurance contract should be determined based upon what a reasonable person placed in the insured's position would have understood the terms to mean." *Key Life Ins. Co. of S.C. v. Tharp*, 253 Miss. 774 (1965).

II.  **Whether there is liability coverage under MUSIC's policy**

MUSIC provides several reasons explaining why its policy does not provide coverage for the damages suffered by Rent City and Pauline Holcombe. This memorandum does not address each argument made by MUSIC, because the reasons discussed below are dispositive. The Court concludes that MUSIC's declaratory action must prevail because its policy does not provide coverage for the injuries suffered by Rent City and Holcombe.

MUSIC's CGL policy states,

> **SECTION I – COVERAGES**
> **COVERAGE A** BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" *to which this insurance applies*. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" *to which the insurance does not apply*.

Exhibit A, Docket No. 103-1 at 36, CG 00 01 12 04 (emphasis added). The policy included a water damage exclusion, which stated, "This insurance does not apply to 'bodily injury' or 'property damage' arising out of any damage caused by water or moisture in any state to include

5

but not limited to rain, sleet, hail or snow." Exhibit A, Docket No. 103-1, at 27, MUS 01 01 20018 1010. In addition, the policy contained the following "open roof" exclusion to COVERAGE A (SECTION I):

> This insurance does not apply to "property damage" for roofing operations conducted by you unless the following conditions are met:
>
> (1) You have taken "appropriate" steps to determine any approaching adverse weather;
>
> (2) You have taken "appropriate" steps to provide a temporary cover for an "open roof," able to withstand the normal elements; and
>
> (3) The cover must be in place if the roof is to be left unattended for more than four hours.
>
> The following additional definitions apply:
>
> "appropriate" means conduct or action customarily taken or used by contractors in the same filed to protect or prevent damage under similar circumstances.
>
> "open roof" means any roof or section where the protective covering (shingles, tar, felt paper etc.) has been removed leaving exposed the underlying material, structure shell or structure interior.

Exhibit B, Docket No. 103-2.

Under the clear language of the policy, rain is an enumerated water source for which damages are excluded. All of the injuries alleged to have been suffered were caused by water from a rain shower. LJA, Rent City, and Holcombe, however, argue that the water damages would not have happened but for LJA's negligence in leaving the building structure uncovered.

Even if the Court ruled that the negligence of LJA was the prevailing cause of damages, LJA would still not be covered pursuant to the "open roof" exclusion.[5] That exclusion contemplates the negligence committed by LJA. Under part "2." of the provision, for example, LJA was required to "take[] 'appropriate' steps to provide a temporary cover for an 'open roof,'"

---

[5] In its third motion for summary judgment, MUSIC argues that coverage does not exist under its policy pursuant to the "open roof" exclusion. MUSIC's Mem. in Supp. of its Third Mot. for Summ. Judg., Docket No. 104.

in order for MUSIC to provide coverage. *Id*. The policy defines "appropriate" as "conduct or action customarily taken or used by contractors in the same field to protect or prevent damage under similar circumstances." *Id*. This provision clearly excludes any failure on behalf of LJA to cover the roof temporarily or have covering available to protect it from harm. LJA's actions fall within this exclusion. The Court finds that the damage caused by the rain is not covered under the policy.

Turning to whether MUSIC was required to provide a defense for LJA on the claims brought by Rent City and Holcombe, "[w]hen there is a question as to whether an insurer is required to defend against an action, '[t]he traditional test is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration.'" *U.S. Fid. & Guarn. Co. v. Omnibank*, 812 So. 2d 196, 202 (Miss. 2002) (citations omitted). "The duty to defend is broader than the duty to indemnify, and it arises if a complaint alleges facts which are arguably within the policy's coverage." *Miss. Farm Bureau Cas. Ins. Co. v. Amerisure Ins. Co*., No. 3:11-CV-706, 2013 WL 286364, at *3 (S.D. Miss. Jan. 24, 2013) (quotation marks and citation omitted). "[R]egardless of whether a complaint's allegations ultimately prove to be meritorious, an insurance carrier has a contractual duty to furnish a legal defense whenever a lawsuit filed against an insured contains an allegation or claim which is covered under the policy." *Id*. (quotation marks and citation omitted). An insurance company, however, "clearly has no duty to defend a claim outside the coverage of the policy." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So.2d 1062, 1069 (Miss. 1996).

Rent City and Holcombe's complaint allege that they suffered damages due to rain water because LJA (through its subcontractors) did not take the necessary steps to ensure that the roof was covered during rain showers. The language of MUSIC's policy unambiguously excludes

coverage for (1) physical and property damage caused by water due to rain, and (2) property damage caused by a failure to provide roofing cover temporarily in order to protect it from harm. Because these exclusionary clauses are "clear and unmistakable," the Court must strictly construe them as written. *See generally Hankins v. Maryland Cas. Co./Zurich Am. Ins. Co.,* 101 So. 3d 645, 654 (Miss. 2012) ("Language in exclusionary clauses must be 'clear and unmistakable,' as those clauses are strictly interpreted. Nevertheless, 'a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.'") (citations omitted).

MUSIC created these provisions for the purpose of excluding the incidents that are the subject of this suit. In exchange for accepting these provisions as part of its liability policy agreement, LJA received a lower premium. *See* MUSIC's Consolidated Mem. of Law in Supp. of its First Mot. for Summ. Judg. at 9. MUSIC is entitled to the benefit of its bargain. *See Hankins*, at 101 So.3d at 653 ("[I]nsurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated.") (citation omitted).

Having determined that the damages suffered by Rent City and Holcombe are excluded under the terms of the policy, MUSIC has no duty to defend LJA for claims brought against it by Rent City and Holcombe.

### III.     Whether MUSIC's declaratory judgment action constitutes a bad faith claim

In MUSIC's second motion for summary judgment, it argues that LJA's counterclaims based on bad faith must be dismissed.[6] *See* Docket No. 101.

---

[6] MUSIC states that all of LJA's counterclaims, except for the claim for declaratory relief, are bad faith claims. *See* Docket No. 101 at 2.

LJA contends that MUSIC's filing of this declaratory judgment action was an act of bad faith. LJA explains that the suit was not needed because the investigation revealed that the open roof provision did not exclude coverage. *Id.* at 17. It further explains that "by naming Rent City as a Defendant and not notifying LJA that it was filing the suit, Plaintiff acted directly against the interests of its own insured and created an adverse litigation situation regarding this claim which did not exist before." *Id.* The purpose of this suit, according to LJA, was so MUSIC could develop facts to constructively deny coverage. LJA also submits that the investigation itself was inadequate. Finally, LJA provides that MUSIC is liable for selling in bad faith its insurance policy, because the water damage and "open roof" exclusions, when read in conjunction, are ambiguous.

The Court is not persuaded by LJA's arguments for claims of bad faith. "In order to pursue a claim for bad faith denial of coverage in Mississippi, the insured bears a heavy burden to prove that its insurer lacked any arguable or legitimate basis to deny such coverage and that the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Mut. Assur., Inc. v. Banks*, 113 F. Supp. 2d 1020, 1023 (S.D. Miss. 2000) (citations and quotation marks omitted). LJA has not met this burden.

Additionally, this Court has previously held that an insurer does not act in bad faith when it initiates a declaratory judgment action to determine whether coverage exists. *See,e.g., Cargill, Inc. v. McDonald Trucking, Inc.*, No. 3:11-CV-545, 2012 WL 1900148, at *1 (S.D. Miss. May 24, 2012) (insurer does not act in bad faith nor breaches the covenant of good faith and fair dealing when it defends its insured under a reservation of rights while also seeking a declaratory judgment to test whether it must continue to defend); *Stratford Ins. Co. v. Cooley*, 985 F. Supp. 665, 673 (S.D. Miss. 1996) (holding that under no circumstances does a claim for bad faith arise

when an insurer brings forth a declaratory judgment action to settle a dispute on coverage, rather than rendering its policy limits to a pre-litigation settlement); *Accident Ins. Co. v. Classic Building Designs, LLC*, No. 2:11-CV-33, 2011 WL 1813268 (S.D. Miss. May 6, 2011) ("the instigation of an action for declaratory judgment to determine coverage is not, itself, evidence of 'bad faith' and it actually may be *prima facie* evidence of 'good faith'"). Moreover, there is no other reason for the Court to reasonably conclude that MUSIC acted in bad faith. MUSIC never denied coverage to LJA. However, even if MUSIC constructively denied coverage, it had a legitimate basis to do so, especially in light of the Court's holding that coverage does not exist. *See Banks*, at 1020. Furthermore, "[a]lthough an insurance company has a duty to adequately investigate an insured's claim, the insured must prove more than mere negligence in conducting the investigation. Rather, the insured must prove that a proper investigation would easily adduce evidence showing its defenses to be without merit." *Id.* at 1025. (citation and quotation marks omitted). LJA cannot demonstrate that MUSIC's defenses lacked merit. On these grounds, no claim of bad faith may proceed.

MUSIC's motion for summary judgment as to LJA's bad faith claims is granted.

### *CONCLUSION*

For the reasons stated above, the Court finds that LJA's actions are not covered under MUSIC's general commercial liability policy, and MUSIC is under no duty to defend.[7] MUSIC's motions for summary judgment are therefore GRANTED.

**SO ORDERED**, this the 30th day of March, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[7] In light of the Court's ruling, the Motion to Allow Oral Argument [Docket No. 125] is denied, and the following motions are rendered moot: Motion to Strike [33]; Motion to Dismiss (Partial) [34]; and Motions in Limine [127, 129].